## WAFEEK ABDELSAYED *v.* MURTY NARUMANCHI (13548)

Schaller, Spear and Hennessy, Js.

Argued September 18—decision released December 5, 1995

*Milo J. Altschuler,* for the appellant (defendant).

*Brian M. Gildea,* with whom, on the brief, was *Robin Stevens,* for the appellee (plaintiff).

---

SPEAR, J. The defendant in this defamation action appeals from a judgment rendered in favor of the plaintiff in the amount of $15,000. The defendant claims that the trial court improperly (1) denied his motion for a directed verdict because the plaintiff failed to prove actual malice by clear and convincing evidence and (2) instructed the jury to presume injury to the plaintiff's reputation on a finding that the defamatory words were actionable per se. We disagree with the defendant's assertions and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all relevant times, the plaintiff and the defendant were professors in the accounting department of the school of business at Southern Connecticut State University. On March 30, 1989, the defendant wrote a memorandum to the accounting department that accused the plaintiff of plagiarizing the defendant's idea for a course to be offered at the university. The defendant again accused the plaintiff of plagiarism at a department meeting held the following day. The defendant wrote a letter to the president of the university requesting an investigation of the matter. After an investigation, Anthony Pinciaro, the university's vice president for academic affairs, found that the plaintiff had not committed plagiarism. After the finding, the plaintiff demanded that the defendant retract the plagiarism charge. The defendant refused to retract the charge and wrote to the president of the university that he was going to India, and that, upon his return, he was going to review his papers and "revert to this subject." Pinciaro advised the defendant that there would be no further investigation.

The plaintiff subsequently brought the present action in defamation against the defendant claiming that the defendant's accusations not only damaged him in his professional capacity, but also caused him to suffer stress as well as lost income as a result of such stress.

The plaintiff also claims that the stress interfered with his doctoral studies and caused him to develop an eye twitch. The defendant maintains that the plaintiff suffered no actual injury. At the close of the plaintiff's case, the defendant moved for a directed verdict on the ground that the plaintiff had failed to prove actual malice by clear and convincing evidence. The defendant also argued that the plaintiff was required to prove actual injury to his reputation, but had failed to do so. The trial court, in denying the defendant's motion, concluded that proof of injury to the plaintiff's reputation was not required, but would be presumed if the alleged defamation was found to be actionable per se.

The trial court thereafter instructed the jury: "Now, in a case involving defamation, where the defamatory words are actionable per se, and I have instructed you that they are if you find them to be false, the law conclusively presumes the existence of injury to the plaintiff's reputation. The plaintiff is not required to plead or prove general damages. Where defamatory words are actionable per se, the plaintiff is entitled to recover what we call general damages even in the absence of any allegation as to them or specific proof of their amount." The jury returned a verdict for the plaintiff in the amount of $15,000. After denying the defendant's motion to set aside the verdict, the court rendered judgment for the plaintiff. This appeal followed.

I

The defendant first maintains that the trial court improperly denied his motion for a directed verdict because the plaintiff, according to the defendant, failed to present clear and convincing evidence of actual malice. In light of the evidence presented at trial, we do not agree.

The trial court ruled that the plaintiff was, in fact, a public figure. This ruling is consistent with our Supreme

Court's holding in *Kelley* v. *Bonney*, 221 Conn. 549, 581, 606 A.2d 693 (1992), where the court concluded that "a public school teacher is a public official for defamation purposes." As such, the law placed the burden on the plaintiff to prove actual malice by clear and convincing evidence. We must now review whether the plaintiff met this burden.

It is well settled that a public official is precluded from recovering damages for defamation unless he or she proves that the defamatory statement was made with actual malice. *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *Holbrook* v. *Casazza*, 204 Conn. 336, 342, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false. *New York Times Co.* v. *Sullivan*, supra, 279–80; *Woodcock* v. *Journal Publishing Co.*, 230 Conn. 525, 535, 646 A.2d 92 (1994), cert. denied, U.S.   , 115 S. Ct. 1098, 132 L. Ed. 2d 1066 (1995). A negligent misstatement of fact will not suffice; the evidence must demonstrate a "purposeful avoidance of the truth." *Harte-Hankes Communications, Inc.* v. *Connaughton*, 491 U.S. 657, 692, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989). Moreover, the plaintiff must prove actual malice by the heightened standard of clear and convincing evidence. *Philadelphia Newspapers, Inc.* v. *Hepps*, 475 U.S. 767, 773, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986); *Brown* v. *K.N.D. Corp.*, 205 Conn. 8, 10, 529 A.2d 1292 (1987).

Our standard of review is governed by the constitution and case law. In defamation cases where the trial court has found actual malice on the part of the defendant, we have an obligation and the "constitutional responsibility" to make an independent review of the record to make sure that there has been no forbidden

intrusion on the right of free speech. *Bose Corp.* v. *Consumers Union of United States, Inc.*, 466 U.S. 485, 501, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984); see also *Woodcock* v. *Journal Publishing Co.*, supra, 230 Conn. 536; *Brown* v. *K.N.D. Corp.*, supra, 205 Conn. 14. "There is no doubt . . . that a trial court finding of actual malice in a defamation case requires an appellate court to conduct an independent review of the record and to draw its own conclusion as to whether actual malice has been proven by clear and convincing evidence." *Brown* v. *K.N.D. Corp.*, supra, 12.

Having conducted an independent review of the record, we are persuaded that the proof of actual malice presented at trial evidences the convincing clarity required by the constitution and our case law. The record demonstrates that the defamatory words used by the defendant were made with actual knowledge or reckless disregard of their falsity.

The defendant first accused the plaintiff of plagiarism in a memorandum dated March 30, 1989, submitted to the accounting department that read in part: "I remember having read . . . of a copy-cat proposal to introduce a course on financial statement analysis. I have the following comments to make concerning this: 1. The gentleman that made this proposal did not have the honesty to point out that that course proposal originated from me. Under other circumstances this would have been considered as nothing short of plagiarism. . . ." At a meeting with Pinciaro, the university's vice president for academic affairs, Alan Leader, the dean of the university's school of business, and Roger Bergh, the vice president for student and university affairs, the defendant once again accused the plaintiff of "[committing] plagiarism by not providing recognition to him as being the author of the proposal to establish a financial statement and analysis course at the institution."

Contrary to the defendant's allegations, the evidence reveals that the idea for a course on financial statement analysis did not originate with the defendant. In his testimony, the defendant admits that he "took the course from the person that had created the course in United States colleges." Consequently, the defendant knew, at the time he wrote his original memorandum accusing the plaintiff of plagiarism, that his statement that the "course proposal originated from me" was false. The defendant further admitted at trial that although he accused the plaintiff of copying his idea to propose the course, the defendant, in fact, never proposed such an idea.

Also, there was ample, uncontroverted testimony from university officials and accounting professors that the idea for a course in financial statement analysis was not sufficiently original to constitute plagiarism. Relying on this testimony, the jury could reasonably have concluded that the defendant also knew that the actions taken by the plaintiff could not constitute plagiarism.

The record also reflects evidence of ill will between the parties. While "proof that a defamatory falsehood has been uttered with bad or corrupt motive . . . will not be sufficient to support a finding of actual malice . . . such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; internal quotation marks omitted.) *Holbrook* v. *Casazza*, supra, 204 Conn. 346–47; see also 3 Restatement (Second), Torts § 580A, comment (d) (1977). In his testimony, the plaintiff maintained that the relationship between the defendant and the plaintiff "was one of hostility" ever since 1985 when the plaintiff decided not to vote for the "[defendant's] proposal to separate the Accounting and Finance Department." In fact, the defendant concedes in his brief that "there is evidence of ill-will and litigation between these parties."

Consistent with our Supreme Court's holding in *Holbrook,* such evidence weighs heavily in our evaluation as to whether the defendant acted with the requisite malice.

Likewise, "[a] refusal to retract a statement that has been demonstrated to be false and defamatory 'might be relevant in showing recklessness at the time the statement was published.' " *Holbrook* v. *Casazza,* supra, 204 Conn. 349, quoting 3 Restatement (Second), supra, § 580A, comment (d). In the present case, Pinciaro investigated the accusation of plagiarism and concluded on May 18, 1989, that "plagiarism was not committed by [the plaintiff]." Thereafter, on June 2, 1989, the plaintiff wrote in a letter to the defendant: "I am therefore demanding an immediate public apology from you and that you formally retract your libelous charge of plagiarism against me at once." At trial, the defendant admitted that he did not retract his statement or "respond in any fashion whatsoever to the letter of Mr. Abdelsayed."

In sum, the defendant's refusal to retract the statement, the demonstrated ill will between the parties, the defendant's admission that the idea for the course did not originate with him, and his admission that he never proposed the idea to the department are evidence of " 'the high degree of awareness of [the statement's] probable falsity'. . . ." *Holbrook* v. *Casazza,* supra, 204 Conn. 349, quoting *Garrison* v. *Louisiana,* 379 U.S. 64, 74, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). The trial court therefore properly denied the defendant's motion for a directed verdict because the record demonstrates proof of actual malice with the convincing clarity required by law.

II

The defendant next claims that the trial court improperly instructed the jury to presume the existence of

injury to the plaintiff's reputation. He argues that the trial court should have instructed the jury that injury to the plaintiff's reputation must be proven to recover for defamation. The defendant, however, has failed to preserve this claim properly for appeal. Our rules of practice preclude us from considering claims of error unless they are distinctly raised at trial. See Practice Book § 4185. Specifically, Practice Book § 315 provides that our courts "shall not be bound to consider error as to the . . . failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken by the party appealing immediately after the charge is delivered. . . ." In the present case, the defendant did not take exception to the jury charge on the issue of presumption of injury immediately after the trial court delivered its instruction. Further, while the defendant did prepare a written request to charge, that proposed charge did not distinctly address the issue the defendant now raises.[1] We, therefore, do not address his claim on appeal.[2]

---

[1] The defendant's request to charge stated in part: "In order for you to find that this statement was defamatory, you must find by clear and convincing evidence that it tends to harm the reputation of the plaintiff as to lower him in the estimation of the community [so as] to deter third persons from associating or dealing with him." We find that these words did not sufficiently afford notice to the trial court as to the claimed error the defendant now raises.

[2] We note, however, that the defendant's improperly preserved claim has no merit. The defendant maintains that there must exist actual injury to the plaintiff's reputation for a statement to be considered defamatory. This claim contradicts well settled principles of law. "To be defamatory, it is not necessary that the communication actually cause harm to another's reputation . . . . Its character depends upon its general tendency to have such an effect." (Emphasis added.) 3 Restatement (Second), supra, § 559, comment (d). To prove the existence of a defamatory statement, therefore, the plaintiff need not prove actual injury, but instead, only a tendency to injure.

Moreover, the trial court's charge instructing the jury to presume the existence of injury to the plaintiff's reputation comports to the law of defamation as it has evolved in our state. While a plaintiff must ordinarily prove injury to reputation as general damages in order to recover, our courts have

The judgment is affirmed.

In this opinion the other judges concurred.

outlined an exception to this requirement. "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it." *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 308, 93 A.2d 292 (1952); see also *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 492, 523 A.2d 1356, cert. denied, 204 Conn. 803, 525 A.2d 1352 (1987).

This court has delineated specific categories of speech deemed actionable per se where "the defamatory meaning of [the speech] is apparent on the face of the statement . . . ." *Battista* v. *United Illuminating Co.*, supra, 10 Conn. App. 491–92. One such category is speech that is likely to injure one in one's business and profession. *Charles Parker Co.* v. *Silver City Crystal Co.*, 142 Conn. 605, 612, 116 A.2d 440 (1955); *Proto* v. *Bridgeport Herald Corp.*, 136 Conn. 557, 566, 72 A.2d 820 (1950). The defendant's charge of plagiarism in the present case falls squarely within this category because his statements were likely to injure the reputation of the plaintiff as a professor and accountant. As such, the plaintiff was not required to prove actual damages, but was instead entitled to a presumption as to injury to his reputation. The trial court's jury charge was, therefore, proper.