MOHINDER P. CHADHA *v.* MYER B.
SHIMELMAN ET AL.
(AC 22129)

Lavery, C. J., and Foti and Landau, Js.

Argued September 26, 2002—officially released April 1, 2003

*Mohinder P. Chadha*, pro se, the appellant (plaintiff).

*Thomas J. Ring*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiff, Mohinder P. Chadha, appeals from the judgment of the trial court rendered in favor of the defendants, Myer B. Shimelman and Neil J. Grey, following the granting of their motion for summary judgment. On appeal, the plaintiff claims that the court improperly (1) applied the wrong definition of "malice," (2) determined that he failed to present a factual predicate for his contention that the defendants' actions were taken with malice and (3) determined the issue of malice, which is not appropriately determined on a motion for summary judgment. We affirm the judgment of the trial court.

In determining a motion for summary judgment, the court may rely on "affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." Practice Book § 17-45. That evidence reveals the following. In February, 1997, the plaintiff, a licensed psychiatrist, was a member of the Charlotte Hungerford Hospital (hospital) medical staff with admitting privileges. On February 20, 1997, the plaintiff filed a complaint with the hospital against Samuel Langer, the chairman of the department of psychiatry at the hospital, alleging that Langer had falsified the minutes of a departmental meeting.

Grey, the medical director of the physician health program (health program) of the Connecticut state medical society (medical society), regularly receives complaints and petitions, in accordance with General Statutes § 20-13d[1] and the department of public health's protocol governing participation of established medical

---

[1] General Statutes § 20-13d (a) provides in relevant part: "The state society or any county society or any physician or hospital shall within thirty days . . . file a petition when such society, physician or hospital . . . has any information which appears to show that a physician is or may be unable to practice medicine with reasonable skill or safety for any of the reasons listed in section 20-13c. . . ."

organizations in the implementation of Public Acts 1984, No. 84-148[2] (protocol), concerning physicians who are or may be unable to practice medicine with reasonable skill and safety.[3] On March 3, 1997, Grey received a telephone call from the vice president of patient operations at the hospital, indicating that the hospital was concerned about the plaintiff's ability to practice medicine with reasonable skill and safety due to perceived emotional health issues. Grey, pursuant to standard health program procedure, asked the plaintiff to submit to a psychiatric evaluation and referred the plaintiff to Shimelman. The plaintiff met with Shimelman on March 7 and March 14, 1997. On March 20, 1997, Shimelman forwarded a letter to Grey in which he reported that "it is my firm opinion as a Board Certified Psychiatrist that Dr. Chadha cannot practice Psychiatry with reasonable skill and safety as a result of his Paranoia." Grey, as mandated by § 20-13d and the provisions of the protocol, submitted a "stage two report"[4] to the department

[2] Public Acts 1984, No. 84-148, was codified as General Statutes §§ 20-13d, 20-13e and 20-13i.

[3] In 1988, the medical society entered into a protocol agreement with the department of health services (now the department of public health). Pursuant to the protocol agreement, the medical society agreed to conduct its impaired physician program in accordance with the department's protocol and thereby was approved as a "participant association" by the department of public health. According to the terms of the protocol, a person or organization mandated to report information that shows that a physician is or may be unable to practice medicine with reasonable skill or safety may fulfill that obligation by notifying a participant organization.

[4] According to the terms of the protocol, a participant association that receives a complaint or petition appearing to show that a physician is or may be unable to practice medicine with reasonable skill and safety is required to report to the department of health. The participant association must make a stage one report within thirty days of receipt of the initial complaint or petition. A stage one report must include the name and address of the physician and a summary of the complaint. A stage two report is generally required to be made within forty-five days of the initial complaint or petition and must "be sufficient in detail to advise the Department of the nature of the purported impairment and include a detailed description of all steps that the Participant Association has taken in the investigation to that point . . . ."

of public health, in which he forwarded Shimelman's opinion. Thereafter, the department of public health filed a motion with the Connecticut medical examining board (board) seeking the summary suspension of the plaintiff's license to practice medicine. On May 20, 1997, the board ordered the summary suspension of the plaintiff's license to practice medicine pending a final determination by the board. In January, 1998, the board issued a final decision ordering the immediate suspension of the plaintiff's license.[5]

On July 23, 1999, the plaintiff filed an amended complaint alleging that Shimelman maliciously produced a false evaluation report and that Grey maliciously made a false complaint to the department of public health.[6] The defendants each filed an answer in response to the plaintiff's complaint. Both defendants asserted the special defense of statutory immunity pursuant to General Statutes § 19a-20.[7]

In December, 2000, the plaintiff filed a motion for summary judgment, which the court denied. Thereafter, in May, 2001, the defendants filed a motion for summary

[5] The plaintiff's license was to be suspended until the plaintiff entered counseling in accordance with the board's decision and provided a copy of the first session to the board. Once the plaintiff complied with those conditions, his license was to be placed on probation for five years.

[6] The plaintiff claimed that he suffered the loss of his right to practice medicine for a year, the complete loss of his medical practice, an inability to obtain professional liability insurance, an inability to obtain employment as a physician or psychiatrist, libel per se, defamation, and loss of standing in the community and medical profession.

[7] General Statutes § 19a-20 provides in relevant part: "No member of any board or commission subject to the provisions of . . . chapters 369 to 375, inclusive . . . including a member of a medical hearing panel established pursuant to subsection (g) of section 20-8a, and no person making a complaint or providing information to any of such boards or commissions or the Department of Public Health as part of an investigation pursuant to section 19a-14, or a disciplinary action pursuant to section 19a-17, shall, *without a showing of malice*, be personally liable for damage or injury to a practitioner arising out of any proceeding of such boards and commissions or department. . . ." (Emphasis added.)

judgment, which the court granted. The court determined that, pursuant to § 19a-20,[8] a qualified immunity existed with respect to the defendants that could be overcome only by a showing of actual malice, and that the plaintiff bore the burden of proof with respect to the malice requirement.[9] The court determined that the plaintiff, in opposing the defendants' motion for summary judgment, failed to present facts sufficient to establish malice, and, therefore, the court determined that the defendants were entitled to judgment as a matter of law. This appeal followed.

"The standards governing . . . a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

---

[8] We note that although the court apparently found that the defendants also were provided with qualified immunity by General Statutes § 19a-17b, we do not address that statute. Subsections (b) and (c) of § 19a-17b confer qualified immunity to certain classes of people and contain standards other than malice that must be overcome for a plaintiff to defeat the immunity provided by those subsections. We do not address § 19a-17b, however, because we consider any claim to the immunity provided by either subsection of that statute to be abandoned. Neither party briefed the issue of immunity under § 19a-17b or the necessary standard to overcome the immunity provided by either of its subsections. See *Kelley* v. *Tomas*, 66 Conn. App. 146, 164 n.2, 783 A.2d 1226 (2001). Moreover, after reviewing the record, we conclude that it was inadequate for the court to determine the applicability to the defendants of either subsection of § 19a-17b because the defendants did not provide the court with any evidence establishing that they were within the class of people protected by § 19a-17b (b) or (c).

[9] We note that although the concurring opinion would apply the common-law doctrine of quasi-judicial absolute immunity to the defendants even if the plaintiff had demonstrated malice, the defendants in this case did not, at any point, contend that they were entitled to quasi-judicial absolute immunity. Moreover, when asked specifically at oral argument whether an absolute immunity or a qualified immunity applied to this case, the defendants' counsel responded that he believed that a qualified immunity applied, pursuant to statute, and that he was not relying on common-law absolute immunity.

a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material [fact] which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"We emphasize the important point, that [a]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citation omitted; internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 549–50, 791 A.2d 489 (2002).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Mulla* v. *Maguire*, 65 Conn. App. 525, 531, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001).

## I

The plaintiff first claims that the court applied the wrong definition of malice. Specifically, the plaintiff asserts that the court applied the definition of "actual malice," which is used for defamation actions, when it should have applied the general definition of malice, or malice in law.[10] We disagree.

Although § 19a-20 does not define "malice," our Supreme Court has held that the malice required to overcome a qualified privilege in defamation cases is malice in fact or actual malice.[11] See, e.g., *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 28, 662 A.2d 89 (1995); *Hassett v. Carroll*, 85 Conn. 23, 35–36, 81 A. 1013 (1911) ("[o]ne publishing defamatory words under a qualified or conditional privilege is only liable upon proof of express malice"). We can perceive no reason, and the plaintiff has provided us with none, to apply a different definition of malice in the context of § 19a-20. We therefore conclude that the court correctly determined that the malice required by § 19a-20 is actual malice.

---

[10] The definition of malice suggested by the plaintiff in his brief, for which he did not provide a citation is: "[T]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. A condition of mind which prompts a person to do intentionally a wrongful act . . . without justification or excuse. A conscious violation of the law (or prompting of the mind to commit it) which operates to the prejudice of another. Malice in law is not necessarily hate or ill will, but the state of mind which is reckless of law and of the legal rights of the citizen."

[11] In his brief, the plaintiff characterizes his lawsuit as one "claiming damages for the malicious conduct of the defendant Dr. Shimelman in producing a false evaluation report and for the malicious conduct of Neil Grey, M.D., in making a false complaint to the department of public health." Although it appears in reading the plaintiff's amended complaint and other documents before the court that the plaintiff believes that malice itself or "malicious conduct" is his cause of action, the court properly viewed the allegations contained in his complaint as stating a cause of action for defamation. We further note that there is no tort cause of action for "malicious conduct."

## II

The plaintiff next claims that the court improperly concluded that he failed to demonstrate a factual predicate for his contention that the defendants' actions were taken with malice. Specifically, the plaintiff argues that the court misrepresented material facts contained in his complaint and opposition to the defendants' motion for summary judgment. The plaintiff also argues that the court ignored his exhibits, which were submitted with his opposition to the defendants' motion for summary judgment. We take the plaintiff's arguments, though inartfully made, to state the claim that he did in fact present a factual predicate for his contention that the defendants' actions were taken with malice. We are not persuaded.

As stated previously, § 19a-20 provides the defendants with a qualified immunity that can be overcome only by a showing of actual malice. "Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth." (Citations omitted; internal quotation marks omitted.) *Abdelsayed* v. *Narumanchi*, 39 Conn. App. 778, 781, 668 A.2d 378 (1995), cert. denied, 237 Conn. 915, 676 A.2d 397, cert. denied, 519 U.S. 868, 117 S. Ct. 180, 136 L. Ed. 2d 120 (1996). "Malice in fact is sufficiently shown by proof that the publications were made with improper and unjustifiable motives." *State* v. *Whiteside*, 148 Conn. 208, 212, 169 A.2d 260, cert. denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33 (1961); see also *Bleich* v. *Ortiz*, 196 Conn. 498, 504, 493 A.2d 236 (1985).

Although the plaintiff did allege quite clearly that the defendants' acted maliciously[12] and even, at one point,

---

[12] In the plaintiff's amended complaint, he alleged that Shimelman's psychiatric evaluation of him was "malicious in that it was deplorably inadequate, was without any finding to support the allegation of 'impaired physician,'

that Grey was conspiring with the hospital to punish
him for filing charges against Langer, those allegations
are conclusory and do not, themselves, equate to a
factual showing that the defendants' actions were taken
with malice. "Mere statements of legal conclusions . . .
and bald assertions, without more, are insufficient to
raise a genuine issue of material fact capable of
defeating summary judgment." (Citation omitted.)
*Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn. App.
162, 170, 604 A.2d 1339, aff'd, 224 Conn. 240, 618 A.2d
506 (1992). Instead, the plaintiff must plead specific
facts, which, if true, would allow a fact finder to reach
the conclusion that the defendants did indeed act
with malice.

Because the plaintiff alleges different malicious acts
by each defendant, we address the plaintiff's claims
with regard to each defendant separately.[13]

### A

In his amended complaint, the plaintiff contends that
Shimelman maliciously produced a false evaluation
report because it was inadequate and incorrect. Specifi-
cally, the plaintiff alleges that Shimelman's "diagnosis"
of paranoia was incorrect, that he did not adequately

---

did not meet the proper criteria for the conclusions reached, was made with
reckless disregard for the truth, and was made with reckless indifference to
the right of the plaintiff to practice his chosen profession." The plaintiff
alleges that Grey's "conduct was malicious in that it was done with reckless
disregard for the truth and with reckless indifference to the right of the
plaintiff to practice his chosen profession, and he did not withdraw his
report to the Connecticut Department of Health before the Department
acted upon it although he had sufficient time to do so."

[13] We note that the defendants argue that many of the plaintiff's exhibits
attached to his opposition to the motion for summary judgment are not
competent evidence to support an opposition to a motion for summary
judgment and should not be reviewed by this court. We decline to address
that issue, however, because, even if we assume that all of the plaintiff's
exhibits were admissible and should be reviewed by this court, the plaintiff,
nonetheless, failed to present a factual basis for his contention that the
defendants' actions were taken with malice.

investigate information provided to him by the plaintiff and that Shimelman's letter did not meet the standards of a forensic psychiatric evaluation.[14]

After carefully reviewing the record, we conclude that although there is some evidence supporting the plaintiff's contentions that Shimelman's evaluation was inadequate and incorrect,[15] the evidence does not provide a factual basis by which a trier of fact could conclude that Shimelman prepared his evaluation with actual malice, that is, with knowledge that his evaluation was false or in reckless disregard of the truth. At most, the evidence supporting the plaintiff's allegations could only support a finding that Shimelman was negligent in his evaluation of the plaintiff. As we have previously noted, however, "[a] negligent misstatement of fact will not suffice [to establish malice]; the evidence must demonstrate a purposeful avoidance of the truth." (Internal quotation marks omitted.) *Abdelsayed* v. *Narumanchi*, supra, 39 Conn. App. 781. There simply is no evidence in the record to support a claim that Shimelman purposefully avoided the truth or prepared his report with knowledge that it was false or in reckless disregard of whether it was true. The court, therefore, properly determined that the plaintiff had failed to present a factual predicate for his contention that Shimelman acted with malice when he prepared his psychiatric evaluation of the plaintiff.

## B

In his amended complaint, the plaintiff contends that Grey maliciously submitted a false and unsubstantiated

[14] The plaintiff also alleges that Shimelman was unable, at the hearing before the board, to substantiate his opinion that the plaintiff could not practice psychiatry with reasonable skill and safety. There is no evidence in the record, however, to support that allegation.

[15] For instance, the board, in its memorandum of decision, did specifically find that there was insufficient evidence to conclude that the plaintiff suffered from paranoia. Additionally, other psychiatrists who examined the plaintiff disagreed with Shimelman's "diagnosis" of paranoia and criticized the thoroughness of his evaluation and report.

stage two report to the department of public health. Specifically, the plaintiff alleges that "Grey knew or should have known that the aforesaid evaluation by the defendant . . . Shimelman was inadequate but he nevertheless reported defendant Shimelman's conclusions to the Connecticut Department of Health." The plaintiff further alleges, inter alia, that Grey did not investigate the complaint he received from the hospital, that Grey had a responsibility to review Shimelman's report before passing it on to the department of public health, and that Grey had certain duties pursuant to § 20-13d and the protocol agreement with the state with which he did not comply.[16]

The plaintiff has produced no evidence to support those allegations. Moreover, even if those allegations were true, they do not, in and of themselves, support a finding that Grey acted with malice when he submitted his stage two report. See *Woodcock* v. *Journal Publishing Co.*, 230 Conn. 525, 545, 646 A.2d 92 (1994) ("failure to undertake an adequate investigation is not dispositive of the issue of actual malice"), cert. denied, 513 U.S. 1149, 115 S. Ct. 1098, 130 L. Ed. 2d 1066 (1995). The fact remains, that the plaintiff has produced no evidence demonstrating that Grey made his stage two report with any improper or unjustifiable motive. The plaintiff also has not produced evidence that Grey published his report with knowledge that statements contained therein were false or with reckless disregard of whether they were false. The court, therefore, properly determined that the plaintiff failed to present a factual predicate for his contention that Grey acted with malice when he submitted his stage two report.

---

[16] The plaintiff also alleges that Grey suggested to the hospital administrator that the hospital should threaten to suspend the plaintiff unless the plaintiff agreed to meet with Grey on March 5, 1997. Even if that is true, it does not evince malice.

## III

The plaintiff finally claims that malice is a question of fact that is not appropriately determined on a motion for summary judgment.[17] The plaintiff argues that malice, as with issues of motive, intent and good faith, is not properly resolved on a motion for summary judgment.

Although the existence of malice is an issue that must be determined by the trier of fact, the plaintiff, to defeat summary judgment, bore the burden of presenting a factual predicate for his contention that the defendants' actions were taken with malice. See *Wadia Enterprises, Inc.* v. *Hirschfeld,* supra, 224 Conn. 250 ("[w]e have also held, however, that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact"). In other words, the plaintiff had to be able to point to facts, which, when taken in a light most favorable to the plaintiff's position, could be found by a trier of fact to constitute malice. In the present case, the plaintiff was unable to make a showing that either defendants' publications were made with knowledge of their falsity or in reckless disregard for the truth. See *Abdelsayed* v. *Narumanchi,* supra, 39 Conn. App. 781. The court, therefore, properly determined that the plaintiff failed to present the necessary factual predicate to raise a genuine issue of material fact as to whether the defendants acted with malice.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] In support of his contention, the plaintiff cites to the court's memorandum of decision on his motion for summary judgment. There, the court denied the plaintiff's motion for summary judgment because it found that malice involves questions of credibility and motive that raise a genuine issue of material fact.

LANDAU, J., concurring. I concur in the majority's result affirming the judgment of the trial court. I, however, respectfully disagree that this court needs to distinguish actual malice and general malice in a case of this nature. I also disagree with the majority's assertion that the plaintiff could have prevailed on the motion for summary judgment if he had demonstrated a factual predicate that the defendants acted with malice. I do not believe that General Statutes §§ 19a-17b and 19a-20 abrogate the public policy grounds underlying the common-law rule providing absolute immunity to parties to and witnesses before judicial and quasi-judicial proceedings. See *Petyan* v. *Ellis*, 200 Conn. 243, 247–48, 510 A.2d 1337 (1986) (information supplied by employer on fact-finding supplement form of employment security division of state labor department entitled to absolute immunity); *Preston* v. *O'Rourke*, 74 Conn. App. 301, 309–15, 811 A.2d 753 (2002) (arbitration is quasi-judicial proceeding and testimony entitled to absolute immunity); *Field* v. *Kearns*, 43 Conn. App. 265, 270–77, 682 A.2d 148 ("bar grievants are absolutely immune from liability for the content of any relevant statements made during a bar grievance proceeding"), cert. denied, 239 Conn. 942, 684 A.2d 711 (1996).

For these reasons, I respectfully concur.