DERRICK TAYLOR *v.* THERESA C. LANTZ ET AL.
(AC 32242)

Lavine, Robinson and West, Js.

---

Argued March 23—officially released June 14, 2011

*Derrick Taylor*, pro se, the appellant (plaintiff).

*Lynn D. Wittenbrink*, assistant attorney general, with whom were *Michael King*, certified legal intern, and, on the brief, *Richard Blumenthal*, former attorney general, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Derrick Taylor, appeals from the summary judgment rendered by the trial court in favor of the defendants, Theresa C. Lantz, Jeffrey E. McGill, Suzanne Ducate, Fred Levesque and Mary M. Marcial.[1] On appeal, the plaintiff claims that the court improperly concluded that (1) there were no genuine issues of material fact and (2) the defendants were entitled to qualified immunity. We affirm the judgment of the trial court.

Viewed in the light most favorable to the plaintiff; see, e.g., *Rodriguez* v. *Testa*, 296 Conn. 1, 6, 993 A.2d 955 (2010); the record reveals the following relevant facts and procedural history. In 1995, the plaintiff was sentenced to a term of imprisonment of eighty years following his conviction for murder, conspiracy to commit murder and assault in the second degree.[2] On May

---

[1] At all times relevant to this action, the defendants were employed by the department of correction (department) in the following positions: Lantz was the commissioner of the department; McGill was the warden of the Northern Correctional Institution; Ducate was the director of psychiatric services for the department; Levesque was the director of offender classification and population management for the department; and Marcial was the director of programs and treatment for the department.

[2] For a detailed account of the facts underlying his conviction, see *State* v. *Taylor*, 239 Conn. 481, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

7, 2003, the department of correction (department) transferred custody of the plaintiff to the New Jersey department of corrections (New Jersey department). While the plaintiff was in the custody of the New Jersey department, officials discovered a loaded handgun secreted in a pantry ceiling at the facility where the plaintiff was being housed. After giving a voluntary statement in which he admitted to hiding the weapon, the plaintiff pleaded guilty to several institutional violations related to the incident.

In December, 2006, the plaintiff was returned to the custody of the department. On or about December 8, 2006, the plaintiff received a notice of an administrative segregation hearing, stating that the department was reviewing him for placement on administrative segregation status, a type of restrictive status, due to the weapon incident in New Jersey. After a hearing on December 13, 2006, the plaintiff was placed on administrative segregation status.

The plaintiff requested and was granted an appeal from his placement on administrative segregation status. On February 6, 2007, a second hearing was held. The hearing officer determined that the plaintiff "pose[d] a threat to the safety and security of staff and facility" and recommended that the plaintiff be placed on administrative segregation status. On February 7, 2007, Levesque authorized the plaintiff's placement on administrative segregation status.

On May 1, 2008, the plaintiff was notified that he had been reclassified to special needs management status, another type of restrictive status. The plaintiff filed a request to appeal his placement on special needs management status, arguing that the reclassification violated his right to due process because he had not been afforded a hearing. The request subsequently was

denied, and the plaintiff remained on special needs management status until October 16, 2008.

By complaint filed September 15, 2008, the plaintiff brought this action against the defendants in their individual and professional capacities pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.[3] In the complaint, the plaintiff alleged, inter alia, that the defendants had violated his right to due process, as guaranteed by the fourteenth amendment to the United States constitution, by placing him on special needs management status without providing him with notice and a hearing. In his prayer for relief, the plaintiff requested "[a] declaratory judgment determining whether [his] right to due process has been violated." The plaintiff also sought damages, costs, attorney's fees and other relief that the court deemed just and proper.

On July 29, 2009, the defendants filed a motion for summary judgment, alleging, inter alia, that there was no genuine issue of material fact and that the defendants were entitled to qualified immunity. The trial court granted the defendants' motion on March 8, 2010. In its memorandum of decision, the court concluded that viewing the evidence in the light most favorable to the plaintiff, there were no genuine issues of material fact as to whether the plaintiff had been deprived of due process. Alternatively, the court concluded that summary judgment was proper because the defendants

---

[3] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ."

were entitled to qualified immunity as a matter of law. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff first claims that the court improperly concluded that there were no genuine issues of material fact. More specifically, the plaintiff argues that a genuine issue exists as to whether his reclassification to special needs management status subjected him to an atypical and significant hardship. The plaintiff also argues that there was a genuine issue as to whether special needs management status was a "mental health status." We reject both of these arguments.

Before considering the plaintiff's individual arguments, we set forth the applicable standard of review and relevant legal principles. Pursuant to Practice Book § 17-49, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Gianetti* v. *Health Net of Connecticut, Inc.*, 116 Conn. App. 459, 464–65, 976 A.2d 23 (2009). With these principles in mind, we turn to the plaintiff's arguments raised in support of his claim.

I

We first consider the plaintiff's argument that a genuine issue exists as to whether his reclassification to special needs management status subjected him to an atypical and significant hardship. We are not persuaded.

The following additional facts are relevant to the plaintiff's first argument. In his complaint, the plaintiff alleged that "[t]he conditions in [s]pecial [n]eeds [m]anagement [status] . . . subject[ed] [him] to an atypical and significant hardship in relation to the ordinary incidents of prison life." The defendants denied this allegation and also submitted a copy of § 9.4 of the

department's administrative directives (directive) in support of their motion for summary judgment.

According to the directive, both administrative segregation and special needs management are a form of restrictive housing status. The directive sets forth general conditions of confinement for all inmates on a restrictive housing status. It also provides that all inmates on a restrictive housing status shall have limited access to programs and privileges afforded to inmates in the general population. It does not set forth different confinement conditions or limitations based upon the specific form of restrictive housing status.

In his affidavit in opposition to the defendants' motion for summary judgment, the plaintiff attested: "Not only were the conditions in [s]pecial [n]eeds [m]anagement [status] more restrictive than those in general population, but in some ways they were more restrictive than the conditions [that] I had been subjected to in [administrative segregation] immediately prior to my placement in [s]pecial [n]eeds [m]anagement [status]." Aside from this bald assertion, the plaintiff produced no evidence regarding the differences in the conditions of confinement in special needs management status and administrative segregation status.

Under the substantive law, "[t]o prevail on a claim under 42 U.S.C. § 1983, a plaintiff must [prove] (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of . . . law." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 294 Conn. 280, 299, 984 A.2d 658 (2009). In the present case, the plaintiff alleged that the defendants deprived him of the right to due process, as guaranteed by the fourteenth amendment to the United States constitution.

"The fourteenth amendment to the United States constitution provides that the [s]tate [shall not] deprive any

person of life, liberty, or property, without due process of law . . . . In order to prevail on his due process claim, the [plaintiff] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Fernandes*, 300 Conn. 104, 122, 12 A.3d 925 (2011). Therefore, to implicate the protections of the due process clause, the plaintiff must have been deprived of a protected liberty interest.

An inmate does not have a protected liberty interest in his classification, per se. *Wheway* v. *Warden*, 215 Conn. 418, 431, 576 A.2d 494 (1990). Instead, to constitute a deprivation of liberty, the inmate must have been subjected to a confinement or restraint, which imposes "an atypical and significant hardship . . . in relation to the ordinary incidents of prison life. . . . Additionally, the [inmate] must establish that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." (Citation omitted; internal quotation marks omitted.) *Coleman* v. *Commissioner of Correction*, 111 Conn. App. 138, 141–42, 958 A.2d 790 (2008), cert. denied, 290 Conn. 905, 962 A.2d 793 (2009).

In the present case, at the time the plaintiff was classified to special needs management status, he already was on another form of restrictive housing status, administrative segregation.[4] In essence, the plaintiff's classification was a horizontal move, i.e., from one restrictive housing status to another, rather than a vertical move, i.e., from the general population to a restrictive housing status. Because the plaintiff did not have a protected liberty interest in his classification status

[4] The plaintiff does not contend that the hearing he received prior to being classified to administrative segregation status was constitutionally deficient.

alone, it was necessary for him to establish that the change in his classification status imposed an atypical and significant hardship.

Turning to the plaintiff's claim, the defendants submitted a copy of the directive in support of their motion for summary judgment. The directive showed equivalent conditions of confinement for inmates on special needs management status and administrative segregation status. Therefore, because the conditions of confinement were alike, the defendants met their burden of showing the absence of a genuine issue of material fact, namely, that reclassifying the plaintiff to special needs management status subjected him to an atypical and significant hardship. Given the directive, to survive the motion for summary judgment, the plaintiff was required to submit some evidence to the contrary.

In opposition, the plaintiff provided only his affidavit, in which he stated conclusorily that he had been subjected to more restrictive conditions of confinement on special needs management status. Such a conclusory statement, however, in and of itself, does not provide a sufficient evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See, e.g., *Shukis* v. *Board of Education*, 122 Conn. App. 555, 565, 1 A.3d 137 (2010) ("[t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue" [internal quotation marks omitted]). Instead, it was necessary for the plaintiff to plead specific facts, which, if true, would enable a fact finder to conclude that the conditions of confinement subjected the plaintiff to an atypical and significant hardship. See *Chadha* v. *Shimelman*, 75 Conn. App. 819, 828, 818 A.2d 789, cert. denied, 264 Conn. 909, 826 A.2d 180 (2003). The plaintiff, however, failed to plead such specific

facts, or to produce any countervailing evidence, demonstrating how the conditions of confinement on special needs management status differed from the conditions on administrative segregation. The plaintiff, therefore, failed to demonstrate the existence of a genuine issue of material fact.

## II

We next consider the plaintiff's second argument that there was a genuine issue as to whether special needs management status was a "mental health status." According to the plaintiff, as a mental health status, special needs management status carries a stigma and, pursuant to *Vitek* v. *Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), the department was required to provide him with a hearing before designating him to this status.[5] We are not persuaded.

In his complaint, the plaintiff alleged that special needs management "was designed for severely mentally ill prisoners considered too violent and/or disruptive for Garner Correctional Institution, the [department] facility . . . that houses inmates deemed to be in need of mental health care." In addition to denying this allegation, the defendants also submitted the directive as evidence of the purpose of special needs management status. The directive provides that special needs management is a status "for inmates who have demonstrated *behavioral* qualities either through the serious nature of their crime, their behavior, or through reasonable belief that they continue to pose a threat to the safety and security of staff, other inmates, themselves,

---

[5] In *Vitek*, the United States Supreme Court held that "due process requires a hearing before state officials may involuntarily transfer a prisoner from a prison to a state mental hospital. That holding . . . was driven by the perceived stigma associated with mental health treatment." *State* v. *Campbell*, 224 Conn. 168, 185 n.18, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993).

or the public." (Emphasis added.) The plaintiff produced no evidence in contradiction to the directive.

Even if we were to assume, without deciding, that *Vitek* requires the department to provide an inmate with a hearing prior to classifying him or her to a mental health status, we conclude that there is no genuine issue as to whether special needs management is a mental health status. Contrary to the plaintiff's allegation, the directive submitted by the defendants showed that special needs management is a status for inmates with "behavioral" problems, rather than mental health problems. As the directive demonstrated that special needs management was not a mental health status, it was necessary for the plaintiff to "substantiate [his] adverse claim by showing that there [was] a genuine issue . . . together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Gianetti* v. *Health Net of Connecticut, Inc.*, supra, 116 Conn. App. 465.

"Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence *outside the pleadings* from which material facts alleged in the pleadings can be warrantably inferred." (Emphasis added.) *Trotta* v. *Branford*, 26 Conn. App. 407, 412, 601 A.2d 1036 (1992). This means that the party opposing summary judgment must establish "[t]he existence of the genuine issue of material fact . . . by counteraffidavits and concrete evidence"; (emphasis omitted; internal quotation marks omitted) *Gianetti* v. *Health Net of Connecticut, Inc.*, supra, 116 Conn. App. 465; which would be admissible in evidence at a trial on the claim. *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 377, 260 A.2d 596 (1969).

A review of the record discloses that the plaintiff did not present any evidence from which the court could

have inferred that special needs management is a mental health status. The only purported evidence presented by the plaintiff was in the form of the allegations of his complaint, which the defendants denied. Such "unadmitted allegations in the pleadings [however] do not constitute proof of the existence of a genuine issue as to any material fact on a motion for summary judgment." *Trotta* v. *Branford*, supra, 26 Conn. App. 412. Therefore, because the plaintiff failed to produce any evidence in contradiction to the directive, he failed to substantiate his adverse claim. Accordingly, we conclude that the trial court properly granted the defendants' motion for summary judgment.

Having concluded that the court properly granted the motion for summary judgment because there were no genuine issues of material fact, we need not reach the plaintiff's claim that the court improperly concluded that the defendants were entitled to qualified immunity.

The judgment is affirmed.

In this opinion the other judges concurred.